# UNITED STATES DISTRICT COURT FOR THE
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| v. | ) | No. 3:09-00240 |
| | ) | Judge Trauger |
| OMEGA HARRIS | ) | |

## MEMORANDUM AND ORDER

### I. Introduction

Pending before the court are the Defendant's Motion for New Trial Based Upon Newly Discovered Evidence (Docket No. 2883), the Government's Response (Docket No. 3008), the Defendant's reply brief (Docket No. 3039), and the Government's Notice of Supplemental Authority Re: Recantation (Docket No. 3143). The court held an evidentiary hearing on the Motion on July 18, 2018. For the reasons set forth herein, the Motion for New Trial will be denied.

### II. Factual/Procedural Background

Defendant Omega Harris was one of over 20 defendants charged in this case, which was formerly assigned to now-retired Judge John T. Nixon. Defendant Harris and co-defendant Leonard Baugh proceeded to trial on January 29, 2013. On April 2, 2013, the jury returned a mixed verdict, finding Defendant Harris guilty of one drug trafficking count involving cocaine (Count Fifteen), one count of unlawful possession of a firearm by a convicted felon (Count Eighteen), and conspiracy to commit prescription drug fraud and drug trafficking (Count Forty-Three). (Docket Nos. 1048, 2135). Defendant Harris was acquitted of three counts of Hobbs Act robbery and three counts charging violations of 18 U.S.C. § 924(c). (*Id.*)

The Defendant was represented at trial by Peter Strianse, but Mr. Strianse moved to withdraw prior to sentencing. (Docket No. 2683). Judge Nixon granted that motion and the Defendant's current counsel, Gary Tamkin, was appointed. (Docket No. 2684). At his request, in part to wait until the amendment to the career offender sentencing guideline took effect, the sentencing was continued several times. Before the last date scheduled for sentencing, however, the Defendant filed the pending Motion For New Trial Based Upon Newly Discovered Evidence (Docket No. 2883). Judge Nixon then continued the sentencing hearing until resolution of the motion for new trial. (Docket No. 2895). The case was subsequently reassigned to the undersigned Judge.

Through the Motion, the Defendant argues that he is entitled to a new trial because two government witnesses – John Gurley and Thomas Coons – gave false testimony at the trial. Defendant primarily focuses on Count 43, which he claims subjects him to a potential 30-year sentence. Count 43 charges a conspiracy to commit prescription drug fraud and drug trafficking as follows:

> Beginning on a date unknown to the grand jury, but at least as early as in or around July 2009, in the Middle District of Tennessee, defendants [11] **Tierra Young** a/k/a "Rella" and [16] **Omega Harris** a/k/a "Nino" a/k/a "Q" did combine, conspire, confederate, and agree with each other and with others known and unknown to the Grand Jury, to knowingly and intentionally obtain and acquire Schedule II controlled substances, by misrepresentation; fraud; forgery; deception; and subterfuge, in violation of Title 21, United States Code, Section 843(a)(3); and to knowingly and intentionally distribute and possess with intent to distribute Schedule II controlled substances, in violation of Title 21, United States Code, Section 841(a)(1).
>
> All in violation of Title 21, United States Code, Section 846.

(Docket No. 1408).

The court entered an order setting an evidentiary hearing on Defendant's claim regarding the testimony of John Gurley and ordered that Mr. Gurley be present to testify. (Docket No. 3067). Prior to the date set for the hearing, counsel for Defendant filed a Notice (Docket No. 3103) stating that he had been unable to locate Mr. Gurley but requesting that the court proceed with the hearing, as the

defense intended to all Mr. Strianse as a witness. The court granted the request (Docket No. 3106) and held the hearing on July 18, 2018 (Docket No. 3145).

III. Analysis

Rule 33(a) of the Federal Rules of Criminal Procedure provides that a court may grant a new trial to a defendant "if the interests of justice so require." When considering a motion under Rule 33, a court may weigh the evidence and assess the credibility of witnesses to insure that there is not a miscarriage of justice. *United States v. Solorio*, 337 F.3d 580, 589 n.6 (6th Cir. 2003); *United States v. Ashworth*, 837 F.2d 260, 266 (6th Cir. 1988).

A. Thomas Coons

The Defendant argues that he is entitled to a new trial based on newly discovered evidence that the Government presented false testimony through witness Thomas Coons. According to the Defendant, the Government misled the jury into believing that Mr. Coons would receive no benefit from testifying against him.

The Sixth Circuit has held that a defendant who seeks a new trial based on newly discovered evidence must show that the new evidence was: (1) discovered only after trial; (2) could not have been discovered earlier with due diligence; (3) is material and not merely cumulative or impeaching; and (4) would likely produce an acquittal if the case were retried. *United States v. Willis*, 257 F.3d 636, 642 (6th Cir. 2001).

Mr. Coons testified that, in 2008-2009, the Defendant provided him with approximately 2,000 Oxycontin pills a week to sell. (Docket No. 2084, at 2365-2368; 2370-72, 2379-80). According to Mr. Coons, the Defendant provided the pills in bottles from which he had removed a tracking device, but he did not know where the Defendant obtained the pills. (*Id.*, at 2368, 2371, 2377, 2380). Mr. Coons testified, however, that he observed a prescription book in the console of the Defendant's car.

3

(Id., at 2378). Mr. Coons testified that the contact in his cell phone for "Q," "QN," and "QU" was the Defendant, whom he knew as "Nino" and "Q." (*Id.*, at 2384; Docket No. 2085, at 2395-98).

As for the charges pending against him, Mr. Coons testified on direct that aggravated burglary, school-zone drug trafficking, and theft charges were pending against him in state court, and firearms charges were pending against him in federal court. (Docket No. 2084, at 2360-63). Mr. Coons testified about the plea agreement he entered into in the federal case in which he had been charged and that he faced 15 years to life as an Armed Career Criminal. (*Id.*, at 2363-64; Docket No. 2086, at 2436).

Mr. Coons was also asked about the pending state charges on cross examination. (Docket No. 2086, at 2416, 2419, 2421-23). He testified that he had not yet reached an agreement regarding the pending state cases and denied any expectation that the federal prosecutor would arrange dismissal of the state charges, even though he faced a potential life sentence. (*Id.*, at 2423-24, 2430). Mr. Coons also testified that his wife and his mother were charged in the state school-zone case, but he denied that his cooperation helped them. (*Id.*, at 2425). As for the federal case, Mr. Coons testified that his plea agreement contemplated a motion for downward departure by the Government at his sentencing hearing. (*Id.,* at 2428-30).

The Defendant asserts that Mr. Coons, in fact, benefitted from his trial testimony as follows: (1) in his federal case, Case No. 3:13cr00020, Mr. Coons was facing 15 years to life as an Armed Career Criminal and, instead, received a sentence of about five years after he testified against the Defendant; (2) in a state court case, Case No. 2012-A-771, he was facing 60 years in prison on school-zone drug charges, but the prosecutors dismissed the charges a few months after he testified against the Defendant; (3) in the same state case, his mother was facing a school-zone drug charge, but the prosecutors dismissed that charge a week after he testified; (4) in another state case, Case No. 2012-A-823, Mr. Coons was facing a 12-year sentence on two burglary charges, but those charges

4

were dismissed when the school-zone drug charges were dismissed; (5) in state Case No. 2012-B-1309, Mr. Coons was facing a six-year sentence for attempted burglary and a six-year sentence for possession of a weapon, but the prosecutors dismissed those charges a few weeks after the jury verdict in the Defendant's trial; and (6) in state Case No. 2012-B-1058, Mr. Coons was facing a six-year sentence for being a felon in possession of a weapon, but the prosecutors dismissed the charge a few weeks after the jury verdict in the Defendant's trial.

In the federal case cited by the Defendant, Case No. 3:13cr00020, the record indicates that the Government filed a motion for downward departure before Mr. Coons' sentencing, which was held approximately one year after the trial in this case concluded. (Docket No. 41, at 2, in Case No. 3:13cr00020). The motion mentions Mr. Coons' testimony against the Defendant as one of several bases for finding substantial assistance. (*Id.*) At sentencing, Mr. Coons' guideline range was determined to be 180 to 210 months, and former Judge Kevin H. Sharp imposed a sentence of 84 months after granting the Government's motion for downward departure. (Docket Nos. 43, 44 in Case No. 3:13cr00020).

Neither party has filed any documents relating to the state cases.

The benefits Mr. Coons received through the disposition of the pending federal and state cases is "newly discovered" evidence only because it did not *exist* at the time of trial. The Defendant has not shown, as an initial matter, that Mr. Coons testified falsely, *i.e.* that he knew, when he testified, the specific rewards he would receive for his cooperation. The Defendant has not shown that there was an actual agreement between Mr. Coons and the prosecutors in his pending cases beyond what he outlined in his testimony.

In any event, that Mr. Coons likely would be rewarded for his cooperation was revealed to the jury during both direct and cross examination. Therefore, the specific rewards Mr. Coons

5

eventually received, as outlined in the Defendant's motion, are not material, nor would they likely produce an acquittal on retrial.[1] The Defendant's trial counsel argued at some length that Mr. Coons was not credible because he was receiving great benefits in exchange for his testimony:

> So January 24, 2013, they talk to him. They whisk him over to federal court. Within two weeks he's pled guilty and has a deal with the Government. Armed career criminal, 15 years to life. He's taking care of all of his messes. And don't think for one minute that something positive is not going to happen with those State charges that he has pending.

(Docket No. 2435, at 2952). The jury apparently was not swayed by that argument to acquit the Defendant on Count 43.

The Defendant also argues that Mr. Coons' testimony at trial about the quantity of pills he received from the Defendant, and the price he charged, was not credible. The Defendant does not explain, however, why the credibility of the story Mr. Coons told at trial constitutes "newly discovered" evidence.

The Defendant goes on to argue that this "incredible" story constitutes false testimony that the Government knowingly presented. A conviction obtained through the knowing use of perjured testimony is fundamentally unfair and must be set aside if there is any reasonable likelihood that the false testimony could have affected the jury. *See, e.g., United States v. Angel,* 355 F.3d 462, 474-75 (6th Cir. 2004). In order to establish this claim, a defendant must show that the statements in question were false, that the prosecution knew they were false, and that they were material. *See, e.g., United States v. Lochmondy*, 890 F.2d 817, 822 (6th Cir.1989). The Defendant presents no independent

---

[1] The court also notes that Sergeant David Layne of the Metro Nashville Police Department testified at trial that Mr. Coons had cooperated with state authorities and that certain state charges against him had already been dismissed. (Docket No. 2084, at 2338-40).

proof that Mr. Coons testified falsely about the trafficking of pills; therefore, the Defendant cannot satisfy the first element.

The Defendant has not established he is entitled to a new trial based on Mr. Coons' testimony at trial.

B. John Gurley

The record indicates that John "Ed" Gurley testified at the trial that he began obtaining prescriptions for Percocet, Xanax, Lortab, and Tussionex from the Defendant around February of 2009. (Docket No. 2063, at 1708, 1710, 1713, 1717). Mr. Gurley filled the prescriptions and typically gave the Defendant the Lortab and Xanex and kept the Percocet and Tussionex for himself. (*Id.*, at 1709, 1712, 1714, 1717, 1719). Mr. Gurley testified that the Defendant gave him prescriptions in the name of Tim Jordan, Travelle Price, David Crutcher, Dionna Mobley, and his brother, Demarco Gurley. (*Id.*, at 1720-22, 1729, 1733). Those names were provided to the Defendant by Mr. Gurley. (*Id.*) According to Mr. Gurley, Mr. Jordan and Mr. Crutcher typically filled the prescriptions that carried their name, but Mr. Gurley filled the prescriptions for Mr. Price, Ms. Mobley, and his brother and did not give the medication to those individuals. (*Id.,* at 1720-24, 1726-28, 1729, 1731-32, 1733). Mr. Gurley testified that this arrangement ended sometime in September 2009, when the pharmacy he was using refused to continue filling the prescriptions. (*Id.*, at 1734-35).

Through the pending motion, the Defendant alleges that, a year after the trial, Mr. Gurley contacted Peter Strianse, who represented the Defendant at trial, and told him that he gave false testimony at the trial. Mr. Gurley told Mr. Strianse that he lied when he testified that the Defendant had given him fraudulent prescriptions and that he obtained the prescriptions for himself. (*Id.*) Mr. Gurley said that he lied under oath because he was afraid he would be locked up and came forward now because "it's not right." (*Id.*, at p. 5 of 8). Mr. Gurley also indicated that he was taking Percocet when

7

he testified. (*Id.*, at p. 7 of 8). The Defendant claims that, absent Mr. Gurley's testimony, there is no evidence that he had anything to do with the fraudulent prescriptions.[2]

In its Response, the Government states that, after Mr. Gurley's interview with Mr. Strianse, Mr. Gurley signed an affidavit stating that his original testimony was true. The Government filed that affidavit as an attachment to its response (Docket No. 3008-1). In the affidavit, Mr. Gurley states that he gave the statement to Mr. Strianse because he feared for his safety:

> . . . approximately seven (7) months after I testified I was in an area where a shooting occurred. I was with a friend, and I felt the shooting might have had something to do with my testimony against Omega Harris. Therefore, after the shooting I decided to go to Mr. Strianse's Office and tell him that I never received prescription forms from Omega Harris. The statement to Mr. Strianse was false. I later learned that the shooting did not have anything to do with me.

(Docket No. 3008-1, p. 1-2). Based on this affidavit, the Government argues that Mr. Gurley's original testimony was true and, thus, there is no "new evidence" that it is false.

At the evidentiary hearing, the Government advised the court that it had attempted to locate Mr. Gurley but had been unsuccessful. The defense called Mr. Strianse as a witness. Mr. Strianse testified

---

[2] The Defendant also argues that Count 43 was based on, and limited to, the theory that the Defendant conspired with Tierra Young who was arrested on September 10, 2009 while trying to fill a fraudulent prescription, and that without Mr. Gurley's testimony, there is no proof supporting his conviction on that Count. The Government argues, on the other hand, that the conspiracy charged in Count 43 was not so limited in scope as suggested by the Defendant. The Government points out that Judge Nixon denied the Defendant's motion to limit the evidence to one day and stated that he would enter a written order to that effect, but the order does not appear on the docket. According to the Government, notwithstanding the absence of a written order, Judge Nixon's subsequent evidentiary rulings (and statements made by the attorneys) indicate that he made such a ruling. Moreover, a review of the record indicates that Judge Nixon did not limit the scope of Count 43 as suggested by the Defendant. At the Defendant's request, Judge Nixon gave a jury instruction on "Multiple Conspiracies, Material Variance From The Indictment," in which he explained to the jury that they could find guilt on Count 43 only if the Government proved a single conspiracy as charged. (Docket No. 2589, at 3115-17). Mr. Strianse confirmed, at the hearing, that Judge Nixon rejected his contention that the evidence offered by the Government exceeded the scope of the conspiracy charged in Count 43.

8

that he represented the Defendant for approximately four years, which included representation at the five-week trial. Mr. Strianse testified that he was surprised by Mr. Gurley's appearance as a government witness and that he first became aware that he would be a witness after the trial had begun. Mr. Strianse could not recall receiving either Jencks material, a proffer letter, or any other information concerning Mr. Gurley. Mr. Strianse believed that Mr. Gurley's testimony was the only proof that tied the Defendant to Count 43, and he complained about having no time to investigate the new information. According to Mr. Strianse, Mr. Gurley's testimony had an impact on the jury's decision to convict the Defendant on Count 43.

Mr. Strianse testified that Mr. Gurley subsequently called his office and requested a meeting that eventually occurred on April 15, 2014, approximately a year after the trial concluded. Mr. Strianse arranged for an associate to attend and record the meeting, without Mr. Gurley's knowledge. Mr. Strianse said Mr. Gurley appeared to be alert and very relaxed when he appeared for the meeting. According to Mr. Strianse, Mr. Gurley indicated he was concerned that his untruthful testimony at the trial may have contributed to the Defendant's conviction. Mr. Gurley said he hardly knew the Defendant and had never received any prescriptions or pills from him. Mr. Gurley said he lied at the trial because he felt threatened. He said that two or three weeks before he testified, prosecutors and agents came to his mother's home, where they threatened his brother with a probation violation and threatened Mr. Gurley and others with jail over the forged prescriptions. Mr. Strianse testified that he told Mr. Gurley he would need to do something with the information, and Mr. Gurley did not ask him not to do so. Mr. Strianse asked to be relieved approximately four months after the interview because the Defendant had become impatient with the fact that Mr. Strianse had not had time to do anything with the recantation testimony. Mr. Tamkin was subsequently appointed as substitute counsel for the Defendant, and Mr. Strianse gave the interview information to him.

9

The Government called FBI Task Force Officer Charlie Harris to testify at the hearing. Agent Harris was the case agent for the Defendant's case. Agent Harris testified that agents went to the home of Mr. Gurley's mother approximately two weeks into the trial to locate Mr. Gurley. According to Agent Harris, Mr. Gurley used his mother's address as his permanent address. Agent Harris denied that the agents threatened Mr. Gurley's mother or anyone else. Mr. Gurley was not at home, but someone at that address said he or she would contact Mr. Gurley and have him contact the agents. The agents subsequently received a call from Mr. Gurley and eventually met him at the parking lot of a Chili's restaurant.

Eight days later, on February 21, 2013, Mr. Gurley was interviewed in a meeting attended by Agent Harris, Rich McGhee, Mr. Gurley's attorney, and Mario Pinto, the prosecutor in charge of the prescription drug portion of the case. Mr. Gurley subsequently testified at the Defendant's trial. Agent Harris testified that he did not mention Mr. Gurley's name when he testified before the grand jury about the prescription drug charge.

After the defense filed the motion for new trial, Agent Harris testified he was directed to try and locate Mr. Gurley. After locating him, Agent Harris served Mr. Gurley with a subpoena to appear before the grand jury. Mr. Gurley arrived on the date requested but, prior to appearing before the grand jury, he met with Agent Harris and others and told them that his statements to Mr. Strianse were false and that his trial testimony was true. Mr. Gurley said he went to Mr. Strianse because he was out one night and heard some gunshots and believed they had something to do with his testimony at trial. According to Agent Harris, Mr. Gurley could not explain why he thought the gunshots were related to him and the trial. He said he talked to a relative who told him he needed to go talk to someone, and he contacted Mr. Strianse.

Agent Harris testified that, after the court set a date for the hearing on the motion for new trial, he was directed to serve Mr. Gurley with a subpoena to appear at that hearing. Agent Harris testified to his exhaustive, but unsuccessful, efforts to try to locate Mr. Gurley.

When a government witness recants his trial testimony, the Sixth Circuit has held that the defendant is entitled to a new trial if: (1) the court is reasonably well satisfied that the testimony given by the material witness is false; (2) without the false testimony, the jury might have reached a different conclusion; *and* (3) the party seeking the new trial was taken by surprise when the false testimony was given and was unable to meet it or did not know of its falsity until after the trial. *United States v. Bass*, 785 F.3d 1043, 1050 (6th Cir. 2015)(quoting *Gordon v. United States*, 178 F.2d 896, 900 (6th Cir. 1949)).

The Government takes the position that Mr. Gurley's statement to Mr. Strianse is not "newly discovered evidence," because he has since stated that *that* statement was false and that his trial testimony was true. The Government also contends that the testimony of other witnesses – Mr. Crutcher, Mr. Jordan, Jermaine Smith and Adam Battle – would have produced the same guilty verdict on Count 43 and serves to corroborate Mr. Gurley's trial testimony.

In his Reply, the Defendant contends that the affidavit of Mr. Gurley filed by the Government is not credible, principally because Gurley would not have waited some five months after the shooting he thought was related to his trial testimony to visit Mr. Strianse and retract that testimony. The Defendant also argues that the testimony of Mr. Crutcher and Mr. Jordan does not corroborate Mr. Gurley's testimony implicating the Defendant. According to the Defendant, no other witness testified to seeing Mr. Gurley get the prescriptions from him.

As to the first requirement, because the court was not able to assess the credibility of Mr. Gurley at the hearing, the court cannot be reasonably well satisfied that the testimony given by Mr.

Gurley at trial is false and that his recantation statements are true. Both Mr. Gurley's trial testimony and his subsequent affidavit given to the Government were under oath. His statement to Mr. Strianse was not. Indeed, Mr. Gurley was not even aware that his statement to Mr. Strianse was being recorded. Although the improbability of Mr. Gurley's waiting months after being frightened by gunshots to go to Mr. Strianse weighs in favor of the Defendant's arguments, the fact that he went to Mr. Strianse instead of his own lawyer, Mr. McGhee, weighs against him. A strong argument can be made that he went to Strianse to assure that the Defendant would be made aware of his recantation, perhaps thinking that Strianse would not be able to do anything with the information, since it was not in writing and he did not know it was being recorded. At best, Mr. Gurley's credibility, at this point, is irreparably impaired, but that does not establish that his trial testimony was false. Mr. Gurley's actions in avoiding appearing for the hearing and having further involvement in this case may well be explained by safety concerns, given the Defendant's position in the Rolling 60's Crips gang. The court is not "reasonably satisfied" that Mr. Gurley's trial testimony was false. Therefore, the first requirement for a new trial has not been met.

As for the second requirement, establishing that the jury might have reached a different conclusion without Mr. Gurley's testimony, the Government contends that Mr. Gurley was not the pivotal witness on Count 43 and points to the corroborating evidence offered by Mr. Crutcher, Mr. Jordan, Mr. Smith, and Mr. Battle. At the hearing, the Government also referenced jail calls made before the trial that were Trial Exhibits 16, 18, 20 and 27, and other evidence.

Mr. Crutcher testified that Mr. Gurley obtained prescriptions for Lortab and Tussin (sic) in Mr. Crutcher's name and dropped them off to be filled at a pharmacy for Mr. Crutcher to pick up. (*Id.*, at 1681-82, 1684, 1686). Mr. Crutcher testified that this arrangement lasted for three to four months, beginning in March 2009. (*Id.*, at 1683-84, 1704). According to Mr. Crutcher, Travell Price and Tim

Jordan were also getting prescriptions from Mr. Gurley. (*Id.,* at 1689-90). Mr. Crutcher testified that he met the Defendant through Mr. Gurley and had obtained individual Lortabs from the Defendant in October 2008. (*Id.,* at 1677, 1687-89, 1691, 1696, 1703).

Mr. Jordan testified that Mr. Gurley obtained prescriptions for Xanax and Lortab in his name and dropped them off to be filled at a pharmacy for Mr. Jordan to pick up. (Docket No. 2064, at 1770-71). According to Mr. Jordan, he participated in this arrangement once or twice in 2009. (*Id.,* at 1772-73).

Mr. Smith testified that the Defendant told him he had a prescription book that Mr. Smith could use to buy pills and that he had obtained the book from someone who worked for a doctor. (Docket No. 2079, at 2060-61). Mr. Smith said he rejected the Defendant's offer of $400 or $450 for Mr. Smith to use his health insurance to help pay for Oxycontin obtained through use of the Defendant's prescription book. (*Id.*, at 2061). Mr. Smith testified that he accompanied the Defendant and the Defendant's cousin on a trip to Kentucky to sell Oxycontin. (*Id.,* at 2063-66).

Mr. Battle testified that the Defendant showed him a prescription pad when they were together one day in 2008 that he said he was trying to use to obtain pills. (Docket No. 2074, at 1839-51).

As discussed above, Mr. Coons testified that, in 2008-2009, the Defendant provided him approximately 2,000 Oxycontin pills a week and that he observed a prescription book in the console of the Defendant's car. (Docket No. 2084, at 2365-2368; 2370-72, 2378-80).

As for the jail calls referenced by the Government, the court notes that the quality of the recordings is poor. They appear, however, to support the Government's theory that Mr. Baugh was angry with the Defendant when he learned that his girlfriend, Tierra Young, was arrested, along with LaSondra Dowell, after attempting to fill a fraudulent prescription, apparently holding the Defendant

responsible for their involvement in the offense. The calls also show the Defendant's involvement in arranging bond for Ms. Young and Ms. Dowell.

The Defendant further argues that Mr. Gurley's story that he provided the Defendant with a relatively small quantity of pills makes little sense in light of Mr. Coons' testimony that the Defendant was supplying him with enormous quantities of pills. However, Mr. Strianse made that argument at trial, and the jury was not persuaded that the apparent inconsistency warranted an acquittal on Count 43.

The court concludes that the Defendant has not established the second requirement.

As to the third element – whether the allegedly false testimony took the defense by surprise – it is clear that Mr. Strianse was surprised by the appearance of Mr. Gurley as a government witness on the prescription drug charge at trial. But, because the first two requirements for a new trial have not been met, the Defendant cannot prevail on his motion.

For the reasons set forth herein, the Motion for New Trial is denied.

It is so **ORDERED.**

ENTER this 4th day of December 2018.

_____
ALETA A. TRAUGER
U.S. District Judge